## A. B. CONLEY ET AL. V. DAUGHTERS OF THE REPUBLIC.

### No. 2507.   Decided April 30, June 4, 1913.

**1.—Legislative Power.**

The State Legislature, being clothed with all governmental power which resides in the people, except as limited by the State and Federal Constitutions (Brown v. City of Galveston, 97 Texas, 1; Const., art. 3, sec. 1), has in general the same rights and powers with respect to property as an individual. The State, acting by its Legislature, had power to acquire title to the "Alamo" property and to place that property in the custody of the corporation the Daughters of the Republic. (P. 90.)

**2.—Same—Daughters of the Republic—Care of Property—Officer.**

Though the corporation, the Daughters of the Republic, had no authority to act as a State officer or exercise functions of government, the care of the "Alamo" property and preparation of plans for its improvement, conferred on such corporation by the Act of Jan. 26, 1905 (Laws, 29th Leg., p. 7), was not such function of government. Such power could be committed by the Legislature to any person; and it was by such Act lawfully conferred on the corporation, which, by acceptance, became a trustee for the State, and not its officer. (Pp. 90, 91.)

**3.—Constitutional Law—Caption of Act.**

The caption of the Act of Jan. 26, 1905 (Laws, 29th Leg., p. 7), sufficiently expressed the purpose of such Act, as required by art. 3, sec. 35, of the Constitution, as being a provision for the purchase of "and for the care and preservation of such property" and appropriating money therefor—expressing in such caption everything provided for in the bill. (P. 91.)

**4.—Corporation—Purpose—Educational Undertaking.**

The expressed purpose of the incorporation of the Daughters of the Republic being "to perpetuate the memory and spirit of the men and women who achieved and maintained the independence of Texas; to encourage historical research into the earliest records of Texas; to secure and hallow historical spots by erecting monuments thereon"; and other similar objects, such association was properly incorporated under article 1121, Rev. Stats., 1911, subd. 2, as an educational undertaking. (P. 91.)

**5.—Same.**

Education, as used in the statute (art. 1121) defining the purposes for which corporations may be created, includes, not merely instruction in school or college, but also moral training, such as the stimulation of patriotism. (P. 91.)

**6.—Same—Public Policy.**

The propriety of legislative action in committing the interests of the State in moral training to a corporation is not a matter to be considered by the court in determining the lawfulness of such action. (Pp. 91, 92.)

**7.—Statutes—Constructive Repeal.**

Repeal by implication is not favored by the courts. Laws relating to the same subjects are to be construed together, and if, so considered, the two can be harmonized and effect given to each, there can be no repeal. (P. 92.)

**8.—Same—Case Stated.**

The "Alamo" property was placed in possession and care of the Daughters of the Republic, in accordance with the Act of Jan. 26, 1905 (Laws, 29th Leg., p. 7), by which it was to be maintained by them without charge to the State, and "to be maintained or remodeled upon plans adopted by the Daughters of the Republic of Texas and approved by the Governor of Texas." No such

plans had been adopted or approved when, in 1911, the Legislature, by its General Appropriation Act, appropriated $5000 for the "improvement of the Alamo property, to be expended under the direction of the Superintendent of Public Buildings and Grounds, upon the approval of the Governor." Held that, (1) the latter Act was not a constructive repeal of the former; (2) the execution of both could be accomplished in harmony, improvements under either being subject to the approval of the Governor; (3) the Superintendent had the right to enter on the premises and make the improvements; (4) he was not bound to await for or accept plans therefor presented by the Daughters of the Republic, but could proceed on those approved by the Governor; (5) subject to the right so given the Superintendent and the Governor, the right of the Daughters of the Republic to the possession and care of the premises remained unaffected; (6) the Daughters of the Republic could not maintain injunction restraining the Superintendent from entering on the premises and making improvements approved by the Governor. (Pp. 92, 93.)

### 9.—Constitutional Law—Title of Act—Appropriation Bill.

The constitutional requirement that no bill shall contain more than one subject and that this shall be expressed in its title does not apply to the General Appropriation Bill, that being specially excepted. And the Legislature, in making an appropriation by such bill, may direct and control the expenditure thereof. No separate Act, nor designation of such purpose in the caption of the General Appropriation Act, is necessary to the validity of such direction. (P. 93.)

### 10.—Suit Against State.

An action to enjoin the State Superintendent of Public Buildings and Grounds from entering upon and making alterations in premises by authority claimed under an Act of the Legislature, is not a suit against the State, and may be maintained if his entry was unlawful. (P. 93.)

ON MOTION FOR REHEARING.

### 11.—State Officer—Mandatory Process—Jurisdiction of District Court.

The District Courts have power to issue an injunction against an officer of the Executive Department of the State government restraining him from an unlawful act, such as trespass on property. This is not a writ to compel the performance of an act or duty, such as is forbidden, save to the Supreme Court by art. 5732 (4861), Rev. Stats., 1911. (P. 94.)

### 12.—Statutes—Conflicting Provisions.

The latest expression of the legislative will prevails over former laws to the extent that the conflict is irreconcilable. (P. 94.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from Bexar County.

The Daughters of the Republic brought suit to obtain an injunction restraining Conley and others acting under his authority from entering upon the "Alamo" property and making alterations therein. The injunction was granted and perpetuated, and the judgment was affirmed on appeal. The defendants, appellants, thereupon procured writ of error.

*B. F. Looney,* Attorney General, *C. M. Cureton,* Assistant, and *J. F. Carl,* for plaintiffs in error.—The State can not delegate its trust. The discretion of officials can not be delegated to those whom the State has

Vol. 106-6.

not trusted.  Logan v. Stephens County, 98 Texas, 283; City of Brenham v. Brenham Water Co., 67 Texas, 542; Dillon, Mun. Cor., 97.

The State can not be sued in her own courts without her consent, whether that suit be brought directly or indirectly; and when it appears from the plaintiff's pleadings that it is in effect a suit against the State, on plea, the suit should abate.  Thompson v. Baker, 90 Texas, 169; Taylor v. Hall, 71 Texas, 213; Marshall v. Clark, 22 Texas, 31; Durrett v. Crosby, 28 Texas, 695; League v. De Young, 2 Texas, 497; Hosner v. De Young, 1 Texas, 770; Chevallier v. State, 10 Texas, 316; State v. Burke, 33 La. Ann., 506; Jobe v. Urquhart, 136 S. W., 663 (Ark.); Berman v. Minn. St. Agricul. Assn., 100 N. W., 732; Charles River Bridge v. Warren Bridge, 11 Pet., 416.

Where a petition shows upon its face that it is based upon a contract with the State, which is sought to be enforced as against the State or State officers, and the consent of the State to be sued does not appear, a general demurrer should be sustained.  Same authorities.

This is, in substance, a suit against the State of Texas and State officials in their capacity as such, and there being no private rights involved, the plaintiffs can not bring or maintain this action.  Same authorities.

The petition of the plaintiff shows that it only has the right to act in a secondary capacity under authority of the State, and, where a power is delegated, those to whom it is delegated are dependent for its continuance upon the will of the superior power except in the case of valuable rights vested thereunder; and where, as in this case, the language delegating that power shows that it is the intention and purpose that it should be subject to recall, no right to dispute that recall can be asserted by those to whom the rights or privileges are granted.  Charles River Bridge v. Warren Bridge, 11 Pet. (U. S.), 416; Cooley's Const. Lim., p. 479.

Where an Act of the Legislature is passed, granting certain concessions or rights thereunder, but shows in itself that it intended that such grant or concession be subject to future legislation upon the same subject, a subsequent Act of the Legislature upon the same subject will be construed as repealing the former, and as expressing the last intention of the legislative body; and if either yields, the first must do so.  Acts 1905, pleaded by plaintiff; Acts 1st Called Session, 32nd Leg., p. 6; Fayette County v. Faires, 44 Texas, 514; Bryan v. Sundberg, 5 Texas, 419; Ellis v. Page, 3 How., U. S., 636; 1 Kent's Com. (5th ed.), 467; Russell v. Farquhar, 55 Texas, 355; Edwards v. Morton, 92 Texas, 152; Von Diest v. San Antonio Trac. Co., 33 Texas Civ. App., 577.

Public policy demands that the State shall not part with control of public property; and an attempt of the Legislature to delegate the State's power of control and management is void.

Public office is the right, authority and duty created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some

portion of the sovereign functions of the government, to be exercised
by him for the benefit of the public.   Kimbrough v. Barnett, 93 Texas,
310; Jones v. Shaw, 15 Texas, 578; Hendricks v. State, 20 Texas Civ.
App., 178; State v. Valle, 41 Mo., 31; State v. Stanley, 8 Am. St., 490;
McCornick v. Pratt, 17 L. R. A., 249; People v. Welker, 68 N. C., 459;
29 Cyc., pp. 1362 and 1363; Throup on Public Officers, sec. 3.

The great weight of authority, in fact the authorities almost without
dissent, hold that all boards and commissioners or agents for carrying
out public works and improvements are public officers.   For the con-
venience of the court, in addition to the authorities heretofore named,
we collate the following:   United States v. Hartwell, 73 U. S., 385;
Vaughn v. English, 8 Col., 39; United States v. Morris, 2 Brock, 103;
Jackson v. Healey, 20 John., 495; Sanford v. Boyd, 2 Cranch. C. C., 78;
Ex parte Smith, 2 Cranch. C. C., 693; Shelby v. Alcorn, 72 Am. Dec.,
169; State v. Kenyon, 7 Ohio St., 546; State v. Wilson, 29 Ohio St., 347;
People v. Rostrand, 46 N. Y., 381; People v. Comptroller, 20 Wend.,
595; People v. Hays, 7 How. Pr., 248; In re Corliss, 23 Am. Rep., 538;
Ellison v. Coleman, 86 N. C., 235.

That appointment to office is an executive function and can never be
exercised by a legislative body except when it is especially granted by the
Constitution of the State.   State v. Denny, 118 Ind., 382, 4 L. R. A., 79;
State v. Hyde, 121 Ind., 20; State v. Peel, 121 Ind., 506; State v.
Kennon, 7 Ohio St., 546; Jones v. Perry, 30 Am. Dec., 430; State v.
Washburn, 67 S. W., 595; State v. Stanley, 66 N. C., 58, 8 Am. Rep.,
448; State v. Tate, 68 N. C., 546; People v. Bledsoe, 68 N. C., 459;
State v. Noble, 118 Ind., 361; City of Evansville v. Blend, 118 Ind., 427;
Taylor v. Commonwealth, 3 J. J. Marsh (Ky.), 401; State v. Barbour,
53 Conn., 76; Madison's Journal of Constitutional Conventions, pp. 86,
87 and 383 (Scott's Edition); State v. Brill, 100 Minn., 500; Taylor
v. Stevenson, 2 Idaho, 183; Atty. Gen. v. Gramlich, 89 N. W., 447; State
v. Barker, 89 N. W., 202; County Comrs. v. Mitchell, 55 Atl., 673.

It is apparent upon the least consideration of the question that the
subject of section 3 of the Act of 1905 is not embraced in the caption
of the Act; that the words "for the care and preservation of the property"
are too general in their effect and do not embrace, either directly or in-
directly, nor by implication, the subject provided for in section 3 of the
Act.   Art. 3, sec. 35, of the Constitution; M., K. & T. Ry. Co. v. State,
102 Texas, 155; Clark v. Commissioners, 54 Kan., 634; Henderson v.
Insurance Co., 20 L. R. A., 829; State v. County Comm., 47 Neb., 428.

To entitle any person or corporation to sue there must be shown an
interest in the subject matter of the suit; and when the action is against
a public officer, it must be shown that such officer is invading the rights
of the complaining party; and a mere naked possession is not sufficient
to entitle such party to a writ of injunction enjoining the officers from
continuing the acts complained of.   30 Cyc., 30; State v. Loan and
Trust Co., 81 Texas, 548; Pelham v. Edlmeyer, 15 Fed., 263; Harding
v. Commissioners Court, 95 Texas, 175; Railway Co. v. Shannon, 100

Texas, 379; Railway Co. v. Barker, 75 S. W., 56; High on Injunctions, sec. 629; Mitchell v. Railway Co., 51 L. R. A., 625.

The ordinary rule of construction when one seeks to determine the rights of a corporation is, that it shall be construed most strictly against the corporation. Every reasonable doubt is to be resolved adversely. Nothing is to be taken as conceded, but what is given in unmistakable terms or by an implication equally clear. Silence is negation and doubt is fatal to the claim. N. W. Fertilizer Co. v. Hyde Park, 97 U. S., 659; East Line Ry. Co. v. Rushing, 69 Texas, 314; Morris v. Smith Co., 88 Texas, 527; State v. So. Pac. Ry. Co., 24 Texas, 127; Wharf Co. v. Ry. Co., 81 Texas, 494; Victoria Co. v. Bridge Co., 68 Texas, 62; Williams v. Davidson, 43 Texas, 1; Sedgwick on Statutory Construction, p. 291; Sutherland on Statutory Construction, secs. 554, 555.

The Act of 1905 does not confer upon the Daughters of the Republic any rights exclusive of the rights of the State; that is to say, it has not surrendered to the corporation its own constitutional authority to maintain and protect this property. It has delegated to them the right or privilege of maintaining and repairing the property upon their own plans, provided they pay for it, but the Act by no means inhibits the State from repairing and preserving the property upon its own plans. The exclusive right claimed by the Daughters of the Republic can not arise in its favor by implication, because the exercise of an exclusive right, that is to say, one exclusive of the State's authority is not necessary for its enjoyment of the privileges named in this Act, and, under the strict rules of construction applicable to corporate rights, that which is not necessary to the enjoyment of the direct privilege granted will not be implied. Ency. Law, vol. 7, p. 708; Railway Co. v. Rushing, 69 Texas, 314; Fertilizer Co. v. Hyde Park, 97 U. S., 659; Sedgwick on Stat. Const., p. 291; Sutherland on Stat. Const., secs. 554, 555; Joyce on Franchises, sec. 254.

The Legislature may change a governmental agency at will, whether such agency be holding the absolute title of property for the government, or whether it be merely exercising some of the functions of government. Lander v. Victoria Co., 131 S. W., 823; City of Victoria v. Victoria County, 100 Texas, 451; Laramie Co. v. Albany Co., 92 U. S., 312; Mt. Hope Cemetery v. City of Boston, 35 Am. St., 515; Clinton v. Cedar Rapids R. R. Co.; 24 Iowa, 455; People v. Kerr, 27 N. Y., 188; Mercer v. Pittsburg R. R. Co., 36 Pa. St., 99; Mayor of Baltimore v. State, 74 Am. Dec., 572; Trustees v. Tatman, 13 Ill., 27; New Orleans R. R. Co. v. Ellerman, 105 U. S., 166.

*Denman, Franklin & McGown* and *Webb & Goeth,* for defendants in error.—Under the Act of the Legislature of the State of Texas, approved January 26, 1905, and the provisions of which are set forth in plaintiffs' petition, pages 2 to 3, the custody and care of the Alamo property is specifically placed in plaintiff, to be by it maintained in good order and repair and to be by it maintained or remodeled upon plans by it adopted, the plans, however, to be subject to approval by

the Governor of Texas. This Act made the Daughters of the Republic of Texas a trustee for the protection and preservation, care and maintenance of the property, and as such it became and was entitled to the actual possession, custody and control, and any trespass upon this possession, custody and control is one against which it, as trustee, is entitled to protection by the writ of injunction as prayed for. A trespasser can not justify his trespass by denying the title of the party in possession to the property trespassed upon. Gen. Laws, 1905, p. 7; Linard v. Crossland, 10 Texas, 464; Beaumont Lumber Co. v. Ballard, 23 S. W., 922; National Bank v. Brown, 85 Texas, 86; Nott v. Harper, 40 So., 921; Knickerbocker, etc., Co. v. Surprise, 97 N. E., 357; Blanch v. Chicago, etc., Ry., 115 N. W., 1013; Dallas v. Barksdale, 83 Texas, 117; Sinclair v. Stanley, 69 Texas, 718; Baker v. Cornelius, 24 S. W., 949; 28 Am. & Eng. Enc. of Law, 574; Trustee v. Walsh, 57 Ill., 363; Fullbright v. Higginbotham, 34 S. W., 875; Trustees v. Gray, 27 N. J. Eq., 278; Trustees v. Hoesli, 13 Wis., 388; Trustee v. Cooper, 24 Atl., 348; Reagan v. Farmers Loan, etc., Co., 154 U. S., 363; Trustees v. Stewart, 43 Ill., 81.

This is not a suit against the State. The acts complained of by the plaintiff are not within the scope of any power conferred upon defendants, but on the contrary, the trespasses alleged are illegal acts of the defendants and they do not act as representatives of the State in doing an illegal act, and, therefore, may be enjoined. Kauffman County v. McGaughey, 3 Texas Civ. App., 665; 22 Cyc., p. 881, and exhaustive note.

The purpose of an appropriation bill is to make appropriations for the support of the government and its institutions and such a bill can not be held to repeal any Act of the Legislature by implication, and there is no express repeal in said appropriation bill of the Act of 1905. There can be no repeal by implication unless there is something in the alleged repealing Act from which a repeal must be necessarily implied. The portion of the appropriation bill alleged to repeal the Act of 1905 merely makes an appropriation of money to be expended on the Alamo and read in connection with the Act of 1905, is a mere provision authorizing the expenditure of money upon plans to be prepared and adopted by plaintiff. There is nothing in the title of the appropriation bill to show that it is anything else than what it purports to be, viz: an Act for the appropriation of money. The Constitution of the State, article 3, section 35, provides that "No bill (except general appropriation bills, which may embrace the various subjects and accounts for and on account of which moneys are appropriated) shall contain more than one subject which shall be expressed in its title." If, therefore, said appropriation bill embraced a clause repealing the Act of 1905, such clause would be unconstitutional. Neil v. Keese, 5 Texas, 33; Stafford v. Stafford, 41 Texas, 118; Hanrick v. Hanrick, 54 Texas, 109; Herndon v. Reed, 82 · Texas, 651; Lees v. Ghio, 92 Texas, 654.

The general laws of the State provide that the purposes for which private corporations may be formed are: "Second. The support of any

benevolent, charitable, educational or missionary undertaking," and this provision is sufficiently broad to authorize the incorporation of plaintiff with the corporate powers and purposes expressed in its charter.

Plaintiff under its act of incorporation has the corporate power to hold possession, care and custody of the Alamo property under the Act of the Legislature placing the custody of that property with it. Northside Ry. Co. v. Worthington, 88 Texas, 568.

The word "subject," as used in the Constitution, means that which is to be dominated or controlled by the particular law and is not synonymous with provisions. (Day, etc., v. State, 68 Texas, 526; Campbell v. Cook, 86 Texas, 630.) Only the general or ultimate object need be stated, not the details by which it is to be obtained. (Johnson v. Martin, 75 Texas, 33; State v. De Lesdenier, 7 Texas, 76, 106; Breen v. Texas, etc., 44 Texas, 302; Snyder v. Compton, 87 Texas, 374; Borden v. Rice & Irr. Co., 98 Texas, 507.)

The constitutional provision is complied with if the title fairly gives such reasonable notice of the subject matter of the statute itself as to prevent the mischief intended to be guarded against. (Stone v. Brown, 54 Texas, 330; State v. McCracken, 42 Texas, 383; Breen v. Texas, etc., 44 Texas, 302; Giddings v. San Antonio, 47 Texas, 548; Doppenschmidt v. International, etc., 100 Texas, 532.) A substantial compliance with the Constitution is sufficient. (Gunter v. Texas, etc., 82 Texas, 496.) The provision of the Constitution under consideration should be liberally construed. (Gunter v. Texas, etc., 82 Texas, 496; Giddings v. San Antonio, 47 Texas, 578; Breen v. Texas, etc., 44 Texas, 302; Stone v. Brown, 54 Texas, 330; Morris v. Gussett, 62 Texas, 728; State v. Mallinson, 82 Texas, 504.) The provision that the title of an Act should contain but one subject was intended to prevent the embracing in one Act, having one ostensible object, irrelevant provisions designed to conceal its object. (Tadlock v. Eckles, 20 Texas, 782; Breen v. Texas, etc., 44 Texas, 302; Adams v. San Angelo, etc., 86 Texas, 485.)

An appropriation bill is not a law having for its purpose legislation permanent in its character. It is a mere legislative provision for the distribution of the State's revenues. With the expenditure of the appropriations made or with the lapse of time within which the expenditures should be made, the bill ceases to be of any effect, except to justify the expenditures made thereunder by the various officers of the State. The single subject of the bill is the appropriation of money and the subjects to which the respective appropriations may be applied are but divisions of the single subject of appropriation. A subject foreign to the subject of appropriation can not be constitutionally embraced in an appropriation bill. The constitutional provision that no bill shall contain more than one subject which shall be expressed in its title excepts appropriation bills from the inhibition so far only as they may embrace the subjects and accounts and on account of which moneys are appropriated. A repeal therefore of an existing statute can not be implied from a provision in an appropriation bill making an appropriation for a particular purpose, or if a repeal could be so implied, it would only

be in a case where it was the evident purpose of the Legislature to effect a repeal by such provision.

The plaintiff under its charter had the power to acquire, possess and care for historic spots and property.   The Act of 1905 did not undertake to enlarge the corporate powers so had under the charter.

The delicate duty of deciding an Act of the Legislature to be in violation of the Constitution should be exercised only when the Act to be construed is clearly unconstitutional.   Adams v. Fisher, 63 Texas, 651; Ex parte Mayer, 27 Texas, 715, 719; Orr & Bro. v. Rhine, 45 Texas, 345, 354; Galveston v. Heard, 54 Texas, 420; Galveston v. Loonie, 54 Texas, 517; Highland v. Galveston, 54 Texas, 527; Barker v. Torrey, 69 Texas, 7; Williams v. Taylor, 83 Texas, 667, 672; Railroad Comm. v. Houston, etc., R. Co., 90 Texas, 340, 349; State v. Brownson, 94 Texas, 436; Petterson v. Board, 24 Texas Civ. App., 33, affirmed in 94 Texas, 692.

*Williams & Stedman* also filed written argument on behalf of defendant in error.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

The plaintiff in error, A. B. Conley, is the Superintendent of Public Buildings and Grounds of the State of Texas.   The defendant in error is a private corporation created under the second subdivision of article 1121 of the Revised Statutes of 1911, which reads as follows:

"1121.   The purposes for which private corporations may be formed are:

"2.   The support of any benevolent, charitable, educational or missionary undertaking."

The charter of the corporation was prepared and filed in accord with the requirements of the law and expressed the purposes of the corporation thus:

"1.   To perpetuate the memory and spirit of the men and women who have achieved and maintained the independence of Texas.

"2.   To encourage historical research into the earliest records of Texas, especially those relating to the revolution of 1835 and the events which followed; to foster the preservation of documents and relics and to encourage the publication of records of individual service of soldiers and patriots of the Republic.

"3.   To promote the celebration of March 2nd (Independence day) and April 21st (San Jacinto day); to secure and hallow historic spots by erecting monuments thereon, and to cherish and preserve unity of Texas as achieved and established by the fathers and mothers of the Texas Revolution.

"This Association may have and hold by purchase, grant, gift or otherwise, real estate on which battles for the independence of Texas were fought; such monument or monuments as may be erected thereon and burial grounds where the dead who fought and died for Texas independence are buried; and personal property consisting of books,

manuscripts and other historical records relating to the early history of Texas, and relics."

A statute enacted by the Legislature of the State became a law in full force January 26, 1905. The first section of that Act provided for the purchase of certain property in the City of San Antonio described thus: "All the land in the City of San Antonio, Texas, known as the Hugo & Schmeltzer Company property, formerly a part of the old Alamo Mission and adjoining the Alamo Church property now owned by the State"; giving the metes and bounds of that to be purchased. The second section of the Act limited the price to be paid, and provided for payment, and appropriated $65,000 to pay the same. The third section reads:

"Upon the receipt of the title to said land, the Governor shall deliver the property thus acquired, together with the Alamo Church property, already owned by the State, to the custody and care of the Daughters of the Republic of Texas, to be maintained by them in good order and repair, without charge to the State, as a sacred memorial to the heroes who immolated themselves upon the hallowed ground; and by the Daughters of the Republic of Texas to be maintained or remodeled upon plans adopted by the Daughters of the Republic of Texas, and approved by the Governor of Texas; provided, that no changes or alterations shall be made in the Alamo Church proper, as it now stands, except such as are absolutely necessary for its preservation. All of said property being subject to future legislation by the Legislature of the State of Texas."

The ground was purchased and the entire property was delivered into the possession of the corporation, "The Daughters of the Republic," which held the exclusive possession and control thereof until plaintiff in error, by direction of the Governor of the State, entered upon said property.

The corporation "maintained the property in good order," but did not remodel it nor prepare any plans therefor.

At the regular session of the Legislature in 1911 the general appropriation bill was enacted and contained this provision:

"For the Years Ending
Aug. 31, 1912. Aug. 31, 1913.

For the improvement of the Alamo property
belonging to the State of Texas, in the City of
San Antonio, to be expended under the direc-
tion of the Superintendent of Public Build-
ings and Grounds, upon the approval of the
Governor ..............................$5,000 00  .........."

Acting under the direction of the Governor, Conley entered upon the property to make improvement without a plan having been prepared by the Daughters of the Republic, and the corporation applied to the Hon. J. L. Camp, judge of the District Court of the Forty-fifth Judicial District, for a writ of injunction upon the allegations stated in the find-

ings of the court, as hereinafter copied, and embraced in the charter of the corporation. The judge granted the writ and upon a hearing perpetuated the injunction, which was affirmed by the Court of Civil Appeals.

The judge of the District Court filed the following findings of fact, which were adopted by the Court of Civil Appeals:

"1. The Daughters of the Republic of Texas is a private corporation, duly incorporated under the laws of the State of Texas, for the purpose set forth and alleged in plaintiff's petition herein.

"2. Under the Act of the Legislature of the State of Texas, approved January 26, 1905, as averred in plaintiff's petition herein, the State of Texas through its Governor, purchased the property known as the old Hugo & Schmeltzer building in plaintiff's petition fully described, and being a part of what is commonly known as the 'Alamo property,' and previous to such purchase, the State of Texas had acquired what is known as the 'Alamo Mission' property proper in said City of San Antonio, the two properties together constituting what is commonly known as the Alamo property in the City of San Antonio.

"3. In accordance with the provisions of said Act of the Legislature, said two properties were delivered by the State of Texas into the custody and care of plaintiff prior to any of the trespasses alleged in plaintiff's petition and at the time of the said alleged trespasses said plaintiff was in possession of said property, holding the care and custody of same under the terms of the Act of the Legislature above referred to.

"4. No plan for any changes or alterations or remodeling of any of the buildings upon said property has been made or adopted by plaintiff and approved by the Governor of the State of Texas.

"5. No plan for any alteration or changes or remodeling of any of said buildings had been prepared by the Governor of the State of Texas and submitted to plaintiff for consideration by plaintiff.

"6. Plaintiff has never surrendered said property nor the care or custody of same to anyone but has retained such possession, care and custody ever since the delivery of the property to plaintiff.

"7. The defendants in their official capacities as alleged in plaintiff's petition entered upon the said property prior to the filing of plaintiff's petition, and without the consent of plaintiff were at the time of the filing of said petition engaged in tearing down certain of the improvements upon said property, making excavations thereon for rebuilding certain of the improvements thereon and for the erection of new improvements thereon and were rebuilding certain of the improvements thereon and remodeling certain of the improvements thereon.

"8. This work was being done without any plan as to what future improvements would be made upon the property or what remodeling of the property would be done, the evidence showing that the work was being done without any fixed or definite plan and the defendants were unable to inform the court what remodeling of any improvements was contemplated nor what improvements were contemplated nor what

changes in the present buildings were contemplated by them or by the Governor of the State."

It is well established that the State Legislature is clothed with all governmental power which resides in the people, subject to such limitations as may be expressed in the Constitution of the State and any limitation embraced in the Constitution of the United States. Brown v. Galveston, 97 Texas, 1.

Article 3, section 1, of the State Constitution provides: "The legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.'"

The power of the Legislature of this State, with reference to the property in question, is not limited by any provision of the Constitution, therefore it has in general "the same rights and powers in respect to property as an individual. It may acquire property, real or personal, by conveyance, will, or otherwise, and hold or dispose of the same or apply it to any purpose, public or private, as it sees fit. The power of the State in respect to its property rights is vested in the Legislature, and the Legislature alone can exercise the power necessary to the enjoyment and protection of those rights, by the enactment of statutes for that purpose." . . . "The State has, in general, the same power to contract as a corporation or an individual." 36 Cyc., pp. 869, 871.

We are of opinion that the State, acting by its Legislature, had the authority to acquire title to the Alamo property and to place that property in the custody of the corporation, the Daughters of the Republic. But it is said that the care of the property was the act of an officer. An officer is one who exercises some functions of the government. No such authority is vested in that corporation. We do not care to discuss this question further than to say, that the preparation of plans for improvement is not a function of the government, but of an architect. The service to be performed by the corporation was such as could have been committed to any person. We are of opinion that by the acceptance of the terms of the statute the corporation became a trustee for the State. But the question arises, can a corporation act as trustee? "The power of a corporation to act as trustee for any purpose within the scope of its charter or governing statute . . . is entirely free from doubt." 10 Cyc., p. 1140. "To constitute a direct trust there must be a conveyance or transfer to a person capable of holding it; there must also be an object or fund transferred, and there must be a *cestui que* trust or purpose to which the fund is to be applied." Commissioners v. Walker, 6 Howard (Miss.), 142, 38 Am. Dec., 433. In the case cited the trustees were appointed by the State and it was held that the action by the State was valid and created a trust in favor of the State. The State had the power by its Legislature to create the corporation and to convey the property to it; the corporation had the power to perform the duties, and there was a purpose that was public. None of the elements of an office are present; but each element of a trust exists. This constitutes

the corporation a trustee of the State with power to maintain the property "in good order and repair." No title passed to the corporation, nor did any authority vest except that expressed or implied by the terms of the law.

Plaintiff in error insists that the Act under which the corporation claims is void because it does not comply with section 35 of article 3 of the Constitution, which reads: "No bill (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title."

The caption of the Act in question reads: "An Act to provide for the purchase and conveyance to the State of Texas of the land in the City of San Antonio known as the Hugo & Schmeltzer Company property, which was a part of the Alamo Mission; and for the care and preservation of said property, and of the Alamo Church property now owned by the State; and appropriating the sum of sixty-five thousand dollars ($65,000) to carry out the provisions of this Act." The purpose was the acquisition of the Alamo property and to provide for the care of it and the appropriation of a sum to purchase the property. Everything provided for in the bill is included in the subject of the bill, as expressed in the caption. The objection is not sound. Murphy v. Menard, 11 Texas, 673; Barnes v. Hardeman, 15 Texas, 366.

The Attorney General asserts that the corporation was not lawfully created under the statute of this State, because the law does not authorize the creation of such corporation for the purposes named in its charter. The second subdivision of article 1121, Revised Statutes, reads: "The purposes for which private corporations may be formed are: . . . 2. The support of any benevolent, charitable, educational or missionary undertaking." The purpose of this corporation is clearly "educational." Whatever educates is within the meaning of "educational undertaking." Education in the sense as used in the statutes includes: "In its broadest sense, . . . not merely the instruction received at school or college, but the whole course of training, moral, intellectual and physical; is not limited to the ordinary instruction of the child in the pursuits of literature. It comprehends a proper attention to the moral and religious sentiments of the child. And it is sometimes used as synonymous with 'learning.'" 14 Cyc., p. 1230.

The sentiment of regard for the memory of those who gave their lives for the blessings of this great State stimulates patriotism and is in the highest sense educational. The facts to be preserved furnish the means of the best education for the young men and women of this State. The purpose is laudable in its influence upon the present generation; it is laudable, educational and benevolent for the future citizens.

This question is asked, "should a State commit its interests to corporations?" This court has naught to do with the policy of the State on that question. All litigants "look alike" here. However, we will say, that this is not such a soulless corporation as needs to have a watch upon its actions. The heart, the soul and spirit of patriotism are the

capital employed by those women which would not detract from the authority and power of the State. On the contrary, those ladies, with no hope of gain to themselves undertook to substitute for the State's fund, which would have been created by taxation, the voluntary offerings of the people—a tribute of patriotism, sanctified by love for the State and reverence for the memory of her heroic dead. Can there be danger from such a corporation? We think not.

It is also urged that the Act which committed the Alamo property to the care of the Daughters of the Republic was repealed by the appropriation bill of 1911, which we again copy:

"For the Years Ending
Aug. 31, 1912. Aug. 31, 1913.

For the improvement of the Alamo property belonging to the State of Texas, in the City of San Antonio, to be expended under the direction of the Superintendent of Public Buildings and Grounds, upon the approval of the Governor ..............................$5,000 00 ........."

There is no express repeal of the former law, hence, if repealed, it must be by implication, which is not favored. The two laws relate to the same subject and should be considered as if incorporated into one act. If being so considered the two can be harmonized and effect given to each, there can be no repeal. Neill v. Keese, 5 Texas, 23. "These statutes, being *in pari materia,* and relating to the same subject, are to be taken together and so construed, in reference to each other, as that, if practicable, effect may be given to the entire provisions of each." . . . "Thus considered, there is no repugnancy between the provisions of these statutes. They may stand together, and effect may be given to the entire provisions of each. And thus to construe and give effect to them is in accordance with the established rule of construction." Brown v. Chancellor, 61 Texas, 438.

The first Act directed the Governor to purchase the Hugo & Schmeltzer company property and deliver it to the corporation, to be maintained in good order at its own expense. The corporation was authorized to remodel and improve the property (except the church) at its own expense, upon plans to be provided by the corporation. and to be approved by the Governor. This conferred upon the corporation the initiative as to improvements, with the power in the Governor to disapprove the plans. His authority was limited and negative.

In 1911 the Legislature evidently believed that there was need for some improvement of the property. The members of the corporation had been at war among themselves which doubtless caused the appropriation to be made in these terms: "For the improvement of the Alamo property belonging to the State of Texas in the City of San Antonio, to be expended under the direction of the Superintendent of Public Buildings and Grounds, upon the approval of the Governor." The Legislature intended that the funds of the State should be expended

by its officer, that is, under the direction of the Superintendent of Public Buildings and Grounds, which implies that the Superintendent should have the right to enter the buildings and grounds for the purpose of improvement. The limitations were (1) it must be done with the approval of the Governor, and (2) he could not interfere with the "old church," except to make repairs necessary to its preservation, which limitation of the statute was general and bound the Governor as well as the corporation.

The entry by the plaintiff in error did not dispossess the corporation, but the duties of each might be performed at the same time, for neither the corporation nor the Superintendent could improve the property without the consent of the Governor. When the $5000 had been expended the right of the Superintendent would have expired. The execution of both laws could have been accomplished in harmony. The provision that the plans to be provided by the Daughters of the Republic for improvement should be approved by the Governor and that the expenditure of the $5000 should be under his direction and control rendered a conflict altogether improbable, if not impossible. There was no repeal of the first Act by the item in the appropriation bill.

To the argument that the direction as to expenditure of the $5000 is unconstitutional, it is sufficient to say that from this language—"no bill (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title," the exception relieves that bill from the limitation and permits the same treatment of each subject of the appropriation bill that would apply if it were embraced in a separate bill. It can not be that a separate and independent law would be necessary to direct and control the expenditure of every item of appropriation.

It has been insisted that this is a suit against the State, therefore not maintainable. This is not an action against the State, but against plaintiff in error, charging him with a violation of a law of the State and an invasion of plaintiff's rights. Stanley v. Schwalby, 85 Texas, 348; 36 Cyc., 917. The subject is treated exhaustively in the text and notes at the place cited. If the decision should be against plaintiff in error, it would not affect the State, but simply establish that he entered upon the premises and proceeded contrary to law, or without lawful authority. The petition for injunction alleged no act done by the plaintiff in error which he was not authorized by law to do under the instruction of the Governor. His entry did not interfere with the corporation in its possession, nor hinder the performance of any duty. The injunction was improperly granted. It is ordered that the injunction be dissolved and that judgment be entered that the plaintiff, the corporation, take nothing by this suit, and that plaintiff in error go hence without day and recover of the corporation, the Daughters of the Republic, all costs of the several courts.

ON MOTION FOR REHEARING.

We do not deem it necessary to discuss at length the objection of the plaintiff in error's counsel to the jurisdiction of the District Court. It is sufficient to say that the facts do not bring the case within the terms of this article of the Revised Statutes of 1911:

"Art. 5732 (4861). No court of this State (except the Supreme Court, as approved by article 1526) shall have power, authority or jurisdiction to issue the writ of mandamus or injunction or any other mandamus or compulsory writ of process against any of the officers of the executive departments of the government of this State to order or compel the performance of any act or duty which, by the laws of this State, they, or either of them, are authorized to perform, whether such act or duty be judicial, ministerial or discretionary."

No mandatory or compulsory writ is sought. Nor is it the purpose of the proceeding to compel the performance of any duty enjoined by law.

We can add nothing to the reasons given for holding, in our opinion, that the two Acts involved are not in conflict. It is the duty of this court to so construe the laws that both can stand, if fairly susceptible of such construction. This court will presume that the Governor of Texas will seek the public good in discharging his official duties and that the Daughters of the Republic will be equally patriotic, so that by co-operation the rights of each party may be preserved. If under the two statutes this may be done there can be no destructive conflict between the two enactments.

The defendant in error is confronted with this indisputable condition. By necessary implication the Act of 1911 conferred authority upon the Governor to do what he might find necessary in making the authorized improvements, and it being the last expression of the legislative will, that Act must prevail over the former law to the extent that the conflict is irreconcilable. The result would not be to limit the authority of the Governor, but to that extent it would abridge the rights of the Daughters.

The motion is overruled.

Opinion filed June 4, 1913.

*Reversed and rendered.*