43 P.(2d) 377

**STATE ex rel. PECK v. VELARDE, State Auditor.**

No. 4026.

Supreme Court of New Mexico.

April 3, 1935.

Kiker & Fernandez, of Santa Fé, for appellant.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for appellee.

BICKLEY, Justice.

Mr. Peck, sheriff of Chaves county, transported a number of prisoners from Roswell to the State Penitentiary. Upon presentation of vouchers for mileage at the rate of 12½ cents per mile, the state auditor, the appellee, refused to allow them. Mr. Peck filed a petition for writ of mandamus and an alternative writ was issued. The state auditor answered that he was by law prohibited from issuing warrants upon the state treasurer upon sheriffs' claims for the transportation of prisoners to the State Penitentiary by privately owned conveyance in excess of 6 cents per mile. At the hearing in the district court at the conclusion of the relator's case, respondent moved for a dissolution of the writ. The motion was sustained and a decree entered dismissing the case upon the ground that under section 6, c. 186, Laws 1933, the relator was limited to mileage at 6 cents per mile.

There is no conflict as to the facts and the question involved on this appeal involves a construction of statutes and the Constitution.

Appellant bases his contention that he is entitled to receive 12½ cents per mile upon section 33-4426, Comp. St. 1929. This section provides:

"The sheriff of the several counties of this state shall be paid mileage at the rate of twelve and one-half (12½) cents a mile, for the distance actually and necessarily traveled in serving any warrants, process, order, citation, summons, jury venire, or decree of any courts now provided by law."

He urges that this statute, enacted in 1899, is of a general and permanent nature, and that it has not been repealed or modified by section 6, c. 186, Laws 1933, said section being in part as follows:

"No appropriation shall be paid pursuant to this Act except upon vouchers submitted to and approved by the State Auditor, duly sworn to and accompanied by such receipts and other evidence that the expenditures herein authorized to be made have been made, as the auditor shall require, except appropriations to meet interest and sinking fund requirements which shall be paid by the treasurer directly.

"No officer or employee of the State shall be allowed or paid any sum for transportation, lodging, or subsistence, except when traveling on duty away from his designated post of duty, nor in excess of necessary traveling expenses actually incurred and paid. No allowances shall be made for lodging and subsistence in excess of four dollars ($4) per day; nor for transportation except by the shortest usually traveled route; and, in case of subordinates, only upon the written order of the head of the department directing such travel attached to the voucher. The maximum rates which may be allowed for travel by privately owned conveyance shall be six cents (6c) per mile."

Since we agree with appellant that section 33-4426 is not repealed, it is unnecessary to comment upon his arguments in support of his contention.

We therefore approach the task of construing the statute from a viewpoint different from that suggested in the argument of counsel for the parties.

Before the adoption of our Constitution, compensation received by sheriffs and other county officers was derived from fees collected by them as provided by law. In the case of sheriffs this was made up from fees to be by them charged for the performance of certain official duties. Section 33-4422, Comp. St. 1929 (Laws 1909, c. 16, § 1). The sheriff was also authorized to charge litigants 12½ cents per mile for the distance actually traveled in serving process: Section 33-4426, Comp. St. 1929. Baca et al. v. Board of Commissioners of Torrance County, 28 N. M. 458, 214 P. 757. We assume that they retained such mileage when collected as a part of the emoluments of office.

Then came the Constitution which abolished the fee system as a means of compensation to county officers, and substituted the salary system. Const. art. 10, § 1; Delgado v. Romero, 17 N. M. 81, 124 P. 649, Ann. Cas. 1914C, 1114; Ward v. Romero, 17 N. M. 88, 125 P. 617; Herbert v. Board of County Commissioners, 18 N. M. 129, 134 P. 204. Such constitutional provision is in part as follows:

" * * * And no county officer shall receive to his own use any fees or emoluments

other than the annual salary provided by law, and all fees earned by any officer shall be by him collected and paid into the treasury of the county."

The first state Legislature got into a disagreement with the Governor, and failed to pass a salary law for county officials as required by this constitutional provision. The second state Legislature, by chapter 12, Laws 1915, enacted what is called the "County Officers' Salary Bill." It was provided by section 3 thereof:

"All traveling expenses actually and necessarily incurred by sheriffs and their deputies while engaged in the service of criminal process issued out of the supreme court or a district court, or when issued by a justice of the peace in the state, if the issuance thereof is approved in writing by the district attorney or his assistants, including the employment and necessary traveling expenses of guards authorized by law to be employed, and the necessary traveling expenses of prisoners, shall be paid by the respective counties in behalf of which the same may be incurred. The actual expenses incurred in or about the service of civil process shall likewise be paid."

Sections 6 (section 33-3206) and 8 (section 33-3208) are as follows:

"No county officer shall accept or receive to his own use, or for or on account of any deputy or deputies, clerk or clerks appointed by him or employed in his office, or for or on account of expenses incurred by him or by any such deputy or deputies, clerk or clerks, or for or on account of his office, any salary, compensation, allowance, fees or emoluments in any form whatsoever, other than as by this act allowed."

"All county officers shall respectively charge and collect all fees, commissions, mileage and per diem heretofore and now, or which hereafter may be authorized by law to be charged and collected for official services rendered by them, and shall keep an accurate and itemized account thereof, and on or before the tenth day of each month pay the same over to the county treasurer of their respective counties, accompanying each remittance by a verified copy of the itemized account covered thereby, which verified copy shall be retained on file by said treasurer. All such county officers shall in like manner account for and pay over to the county treasurer of their respective counties, all such fees, commissions, mileage and per diem heretofore earned and hereafter collected for official services rendered by them from the respective dates when they qualified as such officers."

So it appears that section 33-4426 provides for the rate of mileage the sheriff may charge litigants, and when he collects said mileage he must pay the same into the county treasury. County officers, under the county officers' salary bill, were not to discontinue charging and collecting "fees, commissions, mileage and per diem," but such collections were not to be a part of his emoluments, but were to go into the county treasury presumably to replenish the salary fund.

The Legislature apparently realized that it would be unfair to the officers to require them to incur traveling expenses in order to

serve process which it was their duty to serve and turn the fees and mileage incident to such service into the county treasury without reimbursing them for the expense they had actually and necessarily incurred in thus building up the salary fund. In fact, to require of officers the performance of duties requiring the expenditure of expense money in such performance out of the officer's own pocket without reimbursement would probably run afoul of the constitutional provision against enacting a law diminishing the compensation of officers during their term of office. Article 4, § 27. We have heretofore referred to what the sheriff is required to collect from litigants incident to the service of process. And we discover in the 1915 act (section 33-3203) for the first time what the county is to pay the sheriff as incident to the service of process, i. e., "all traveling expenses actually and necessarily incurred * * * while engaged in the service of criminal process issued out of the supreme court or a district court. * * * The actual expenses incurred in or about the service of civil process shall likewise be paid."

Apparently the sheriff cannot collect from the county service fees and mileage for the service of process issued on behalf of the county or state. To such extent section 33-4426 (act of 1899) was modified by section 33-3203. "Warrants," enumerated in section 33-4426 as criminal process, would be an illustration of this. Whether the sheriff, serving criminal process in criminal cases where costs may be recovered from a convicted accused person who is adjudged to pay costs, shall collect mileage and charge the same up to the accused and, when collected, turn the same into the county treasury is a question not necessary to decide, but we see no requirement that the county pay such mileage.

It would seem an idle ceremony for the sheriff to collect from the county 12½ cents per mile for distance traveled in serving criminal process, and pay it back into the county treasury. What the county pays to the sheriff he is not required to pay back to the county. By section 8 of chapter 12, Laws 1915 (section 33-3208), the sheriff is required to pay into the county treasury mileage he collects from others than the county.

Then the Legislature, in the salary bill, incorporated a provision in section 33-3203, specifically dealing with the matter of transporting prisoners to the penitentiary, and made the expenses thereof a state obligation as it had been ever since 1895 (section 33-4431), declaring:

"Provided, all actual and necessary expenses incident to the transportation of prisoners to the penitentiary shall be paid by the state out of such funds as are or may be appropriated for such purpose, upon itemized, sworn accounts filed with the state auditor and warrants drawn by the latter upon the state treasurer."

We have not noticed so far any definition of "actual and necessary traveling expenses" or guide to the state's disbursing officers as to how "such funds as are or may be appropriated for such purposes" are to be applied to such expense, except that it shall be "upon itemized, sworn accounts." Since such expenses shall be paid by the state only

out of "such funds as are or may be appropriated for such purpose," the Legislature, having the power to withhold an appropriation of funds for such purpose, had the power to prescribe the details of how the money appropriated should be disbursed. State ex rel. Whittier v. Safford, State Auditor, 28 N. M. 531, 214 P. 759.

 The Legislature of 1933, by section 6, c. 186, heretofore quoted, limits the amounts which may be allowed out of the money appropriated for traveling expenses to what is necessary and to such as is actually incurred and paid, and then limits the allowance for lodging and subsistence to $4 per day, and limits the allowance for transportation to the "shortest usually traveled route." And it is further provided that if the transportation has been by public conveyance, the officer gets back what he has actually paid out. That is an item easily ascertainable by the disbursing officer. Conceiving that an officer might find it more convenient and practical to transport by privately owned conveyance, it was provided that "the maximum rates which may be allowed for travel by privately owned conveyance shall be six cents (6c) per mile."

This is not to say that the expenses of operating the privately owned conveyance may not be more or less than 6 cents per mile, but if the officer elects to use that method of transportation, 6 cents per mile is the most that he can claim therefor. The alternative of transportation by public conveyance is open to him, in which event he gets back all he paid out.

We assume that relator sought to have his claim paid out of moneys appropriated by the 1933 Legislature, and finding the position taken by the respondent state auditor to be warranted by the legislative direction as to the manner of allowance of claims against such appropriated funds, we find no error in the judgment of the district court.

The judgment must therefore be affirmed, and it is so ordered.

SADLER, C. J., and HUDSPETH, WATSON, and ZINN, JJ., concur.