

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

December 4, 1961

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin 11, Texas

Opinion No. WW-1207

Re: Validity of the provision
contained in S. B. No. 1,
Acts 57th Legislature, 1st
Called Session, 1961, page
IV-72, Section 24, Sub-
section h, which provides
for a revolving fund to be
used for payment of salaries
of certain employees
directly by State agencies
of higher education.

Dear Mr. Calvert:

You have requested our opinion concerning the
validity of Sub-section h of Section 24, Article IV, S. B.
No. 1, Acts 57th Legislature, 1st Called Session, 1961, page
IV-72. This provision is a part of the current general
appropriation bill and reads as follows:

"h. Revolving Fund. Each institution
affected by this Section, at its option, is
hereby authorized to maintain a revolving fund
to facilitate the payment of nominal expenses
and to pay bills within cash discount periods.
The institutions may use the revolving fund
for regular monthly payrolls as well as for
weekly and special payrolls. Disbursements
from the revolving funds are to be reimbursed
from respective appropriations made herein,
the State Comptroller being hereby authorized
to make such reimbursements on claims filed
with him by the institutions under his regularly
prescribed procedures except that one voucher
and one warrant may cover any number of claims
for this purpose. These reimbursement claims
shall meet the same requirements as other claims
against State appropriations, and each institution

shall prepare such a reimbursement claim as at the close of business on the last day of each month and as many times during each month as may be expedient in order to make unnecessary the maintaining of an unreasonably large revolving fund."

Your questions concerning this provision are as follows:

"1. Is this an invalid provision of the appropriation bill by reason of it being general legislation?

"2. In the event your answer to the above question is in the negative: does the above provision of the appropriation bill attempt to modify or amend a general statute?"

These questions, though seemingly of singular import, necessitate a general consideration of the constitutional restrictions on the legislative process as applicable to a general appropriation bill and the rules which govern the courts in their application.

Generally speaking, a constitution is the expression of the sovereign will of the people and it is the basis upon which the function of the legislature, the executive and the judiciary are founded. Section 1 of Article III of the Constitution of Texas provides that:

"The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.'"

With these words, the people of this State, acting in their sovereign capacity, endowed the Legislature with all legislative power which they, the people, inherently possessed. ". . . /E_/ xcept in the particulars where it is restrained by the Constitution of the United States, the legislative department may exercise all legislative power which is not forbidden expressly or by implication by the provisions of the Constitution of the State of Texas." Brown v. City of Galveston, 97 Tex. 1, 75 S.W. 488, 492 (1903). Lytle v. Halff, 75 Tex. 132, 12 S.W. 610 (1889); Conley v. Daughters of the Republic, 106 Tex. 80, 156 S.W. 197 (1913); Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31 (1931).

It is not contended, nor do we think that it can

be, that the Legislature lacked the power to legislate upon the subject embraced by the rider in question. The question is whether the inclusion of this rider in the general appropriation bill is prohibited by some provision of our Constitution.

Section 35 of Article III of the Constitution of Texas provides:

"No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

What is the purpose of this limitation upon the legislative power? Our Supreme Court has answered this question in Stone v. Brown, 54 Tex. 330 (1881) at page 342 in the following language:

"The principal object of this constitutional provision is to advise the legislature and the people of the nature of each particular bill, so as to prevent the insertion of obnoxious clauses, which otherwise might be engrafted thereupon and become the law; and also to prevent combinations, whereby would be concentrated the votes of the friends of different measures, none of which could pass singly; thus causing each bill to stand on its own merits. Cooley's Const. Lim. (4th ed.), 173; Giddings v. San Antonio, 47 Tex., 555; Albrecht v. The State, 8 Tex. Court of Appeals, 216."

Although Section 35 of Article III has been held to be mandatory and not merely directory, our courts have declared that it is to be given a liberal construction with the object of making the" . . .whole constitutional where the part objected to as infringing this provision of the Constitution could be considered as appropriately connected with or subsidiary to the main object of the act as expressed in the title . . ." Giddings v. San Antonio, 47 Tex. 548, 556 (1877). Cannon v. Hemphill, 7 Tex. 208 (1851); Tadlock v. Eccles, 20 Tex. 782 (1858); Davey v. Galveston County, 45 Tex. 291 (1876).

Just what provisions may a general appropriation bill contain in addition to bare appropriation of funds without contravening Section 35 of Article III of our Constitution? Our Supreme Court has held that a rider in a general appropriation bill which specifies the fees that district clerks are to charge for furnishing unofficial copies of court records and prescribing a duty to furnish such copies is clearly not subsidiary or germane to the subject of appropriation but constitutes a separate subject and consequently contravenes Section 35 of Article III. Moore v. Sheppard, 144 Tex. 537, 192 S.W.2d 559 (1946). Special directions as to the expenditure of an item in a general appropriation bill were held not to be prohibited by Section 35 of Article III in Conley v. Daughters of the Republic, 106 Tex. 80, 156 S.W. 191 (1913), where the court said at page 202:

> ". . .the exception releives that bill from the limitation and permits the same treatment of each subject of the appropriation bill that would apply if it were embraced in a separate bill.

> "It cannot be that a separate and independent law would be necessary to direct and control the expenditure of every item of appropriation."

While other phases of the application of Section 35 of Article III have been written upon by our Texas Courts extensively, only these two Texas decisions have touched directly upon the questions raised by your request, consequently we feel that the decisions of the courts of other states will be enlightening.

In considering a similar constitutional provision and its application and effect upon a general appropriation bill the Supreme Court of New Mexico in State v. Marron, 17 N.M. 304, 128 P. 485 (1912) at page 488 had this to say:

> ". . .It was evidently also designed to prevent general legislation in such a bill in no way related to making provision for the expenses of the government.

> ". . .To sustain the contention that the general appropriation bill should contain nothing, save the bare appropriations of money, and that provisions for the expenditure of the money, or its

accounting, could not be included therein, or that the method and means of raising the money appropriated could not likewise be included, would lead to results so incongrous that it must be presumed that the framers of the Constitution had no such intent in the adoption of the restrictions referred to."

Continuing from the same source at page 489:

". . .What vice or evil can there be in making provisions in such an act, which are incidental to the main fact of appropriation? The limitation was imposed upon the main act of the appropriation, and not the matters of detail connected with such appropriation. . . the courts all uniformly hold that any matter germane to the subject expressed in the title of a bill and naturally related to it is valid. When an appropriation is made, why should not there be included with such appropriation matter germane thereto and directly connected with it, such as provisions for the expenditure and accounting for the money, and the means and methods of raising it, whether it be by taxation or by some other method?"

In Whittier v. Safford, 28 N.M. 531, 214 P. 759 (1923) the New Mexico Supreme Court again reasoned at page 760:

". . .The details of expending the money so appropriated, which are necessarily connected with and related to the matter of providing the expenses of the government, are so related, connected with, and incidental to the subject of appropriations that they do not violate the Constitution if incorporated in such general appropriation bill. It is only such matters as are foreign, not related to, nor connected with such subject, that are forbidden. Matters which are germane to and naturally and logically connected with the expenditure of the moneys provided in the bill, being in the nature of detail, may be incorporated therein . . ." (Emphasis added)

Also to the same effect is Peck v. Velarde, 39 N.M. 179, 43 P.2d 377 (1935).

Cases from other jurisdictions reaching the same conclusion as the New Mexico Supreme Court include: Sellers v. Frohmiller, 42 Ariz. 239, 24 P.2d 666 (1933); Crane v. Frohmiller, 45 Ariz. 490, 45 P. 2d 955 (1935); State v. Angle, 54 Ariz. 13, 91 P.2d 705 (1939); Caldwell v. Board of Regents, 54 Ariz. 404, 96 P.2d 401 (1939); Trotter v. Frank P. Gates & Co., 162 Miss. 569, 139 So. 843 (1932); Davidson v. Ford, 115 Mont. 165, 141 P.2d 373 (1943).

If the rider in question does no more than provide for a manner of expenditure and method of accounting of the appropriations to the affected institutions, then under the foregoing authorities, the rider would clearly not be general legislation but would be incidental and germane to the subject of appropriation.

The disbursement of money through and by the use of a revolving fund is a widely used and well recognized accounting procedure. Its main advantage is that its use facilitates the payment of expenses which recurr regularly at short intervals and expenses which in good business practice demand immediate payment. Mikesell & Hay, Governmental Accounting (3rd Ed. 1961); Tannery, Fladga F., State Accounting Procedures (Public Admin. Service 1943).

In our opinion, this rider is not general legislation. When we consider the appropriation of funds to the institutions of higher education as one subject of the general appropriation bill, this rider, by providing a well recognized accounting procedure for the disbursement and allocation of the funds for the purposes specified, is clearly germane and incidental to this subject and is further covered by that portion of the caption of the bill which reads as follows:

"...authorizing and prescribing conditions, limitations, rules and procedures for allocating and expending the appropriated funds; ..."

Consequently, your first question is answered in the negative.

Even were we in doubt in this respect we would reach the same conclusion on this question. The well settled rules of construction dictate that the courts approach with reluctance the decision that an act of the Legislature is unconstitutional. When asked to strike down an act of a coordinate branch of the government the courts will resolve every reasonable doubt in favor of the constitutionality of the act and only in those instances where some prohibition

of the Constitution is clearly contravened will the act be so construed.  The courts were not intended to sit as the ever anxious critics of legislative expression or the censor of their acts.  Fletcher v. Peck, 6 Cranch 87, 3 L. Ed. 162 (1810); Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606 (1827); Maud v. Terrell, 109 Tex. 97, 200 S.W. 375 (1918); Harris County v. Stewart, 91 Tex. 133, 41 S.W. 650 (1897).

In response to your second question:  It is our opinion that the rider in question does not attempt to amend or modify an existing general statute.

Indeed, the rider itself negates any intention to amend or modify an existing general statute by stating:

". . .These reimbursement claims shall meet the same requirements as other claims against state appropriations . . ."

Further, as we have observed above, the rider merely authorizes the various institutions affected to use, at their option, a recognized procedure of accounting for the allocation and disbursement of appropriated funds". . . to facilitate the payment of nominal expenses and to pay bills within cash discount periods . . .for regular monthly payrolls as well as for weekly and special payrolls . . ." There is no general statute specifying that these institutions use a different accounting procedure in allocating and disbursing the funds affected, and in absence of such a general statute there is no attempt at amendment or modification.

## S U M M A R Y

Sub-section h of Section 24 of Senate Bill No. 1, Acts 57th Legislature, First Called Session, 1961, page 245 of the Supplement to Senate Journal is not invalid by reason of its being general legislation contained in a general appropriation bill; neither is this provision an attempt to modify or amend an existing general statute.

Very truly yours,

WILL WILSON

By W. O. Shultz
Assistant

WOS:kh

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

John Reeves
Leslie King
Dick Wells
Dudley McCalla

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Houghton Brownlee